The majority apparently sees this case as presenting the question of whether the uninsured motorist property damage exclusion contained in Progressive's policy is consistent with R.C. 3937.181. I on the other hand see this as a simple case in which an internal contradiction within the policy itself creates an ambiguity that should be construed strictly against Progressive and in favor of its insureds. In my view, Progressive's self-contradictory policy language makes consideration of R.C. 3937.181 beside the point. I therefore dissent.
Part III of Progressive's policy provides separate "Uninsured/Underinsured Motorist Bodily Injury Coverage" and "Uninsured Motorist Property Damage Coverage." The insureds paid separate premiums for these distinct coverages. With regard to uninsured motorist property damage (UMPD), the Progressive insuring agreement states, in relevant part:
 Subject to the Limits of Liability, if you pay a premium for Uninsured Motorist Property Damage Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle
due to property damage:
1. caused by accident; and
 2. arising out of the operation, maintenance or use of an uninsured motor vehicle. (Emphasis in original.)
Under the "additional definitions" applicable to Part III, paragraph 5 states:
"Uninsured motor vehicle" means a land motor vehicle:
a. * * *
b. * * *
 c. that is a hit-and-run vehicle whose operator or owner cannot be identified and which strikes:
i. you or a relative;
 ii. a vehicle that you or a relative are occupying; or
 iii. a covered vehicle;
provided that the insured person, or someone on his or her behalf, reports the accident to the police or civil authority within twenty-four (24) hours or as soon as practicable after the accident.
However, we shall not pay for property damage
unless there is actual physical contact between the hit-and-run vehicle and the covered vehicle.
* * * (Emphasis in original.)
The Progressive policy then enumerates certain exclusions, and states in relevant part:
 EXCLUSIONS — READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.
* * *
 Coverage under this Part III is not provided for property damage:
* * *
 8. if the owner or operator of the uninsured motor vehicle has not been identified. (Emphasis in original.)
So according to Progressive's policy, it promises to provide UMPD coverage for an accident caused by a hit-and-run vehicle whose owner or operator cannot be identified, but then excludes UMPD coverage if the owner or operator of the hit-and-run vehiclehas not been identified. This has the look and sound of the classic carnival shell game: "Now you see it, now you don't."
It seems obvious to me that an owner or operator who cannot be identified never will be identified. Yet Progressive's policy apparently says that unless an unidentifiable owner or operator has been identified, Progressive will not provide UMPD coverage. If Progressive intended to exclude UMPD coverage unless the owner or operator of the hit-and-run vehicle has been identified, then someone must explain to me what Progressive meant when it said that it would pay for property damage caused by a hit-and-run vehicle whose owner or operator cannot be identified. I do not see how we can brush over Progressive's self-contradictory policy language.
It may be that Progressive did not have to offer UMPD coverage caused by an uninsured automobile or motor vehicle whose owner or operator has not been identified, but nothing prohibits an insurer from providing coverage that is broader than the minimum that is required by statute. Cf. Berry v. Motorists Mut. Ins. Co.
(1983), 13 Ohio App.3d 228, 230 (insurer is not precluded from providing uninsured motorists coverage that is broader than minimum requirements mandated by R.C. 3937.18).
 As long as insurers comply with the minimum requirements of the statute, they are free to structure their policies in any way desired. Insurers may also provide coverage that exceeds the requirements of the statute, and it is only by looking at the policy provisions that a court can decide what coverage was actually afforded.
Fox v. Auto-Owners Ins. (Jun. 12, 1998), Montgomery App. No. 1456, unreported, at * * 4.
So while R.C. 3937.181(B) may indeed have permitted Progressive to exclude coverage if the owner or operator of the uninsured vehicle has not been identified, Progressive's contradictory policy language instead provides coverage with one hand and then denies coverage with the other. Whether Progressive's convoluted draftsmanship is considered sloppy or deceptive, I would in either event construe Progressive's contradictory language strictly against it and in favor of its insureds.
I am also bothered by the majority's statement that "an exclusion does not have to offer any guidance as to whether the exclusion takes precedence over the definition of an uninsured motorist." Ante at 8. A policyholder should not have to guess whether the policy will or will not provide coverage. The insurer who accepts its insureds' premiums should at least be clear in its policy language. The disputed policy language here does not involve a broad general insuring provision that is then narrowed and refined by precise language addressing a particular contingency. This policy instead says that it will provide coverage in the event that "A" occurs and then says that it will exclude coverage in the event that "A" occurs. The insurer that creates its own paradox and offers no guidance to resolve the paradox should bear the consequences.
I would hold that Progressive's policy language created an ambiguity that should be construed strictly against the insurer and in favor of its insureds. I would therefore reverse the judgments rendered below. ___________________________ JUDGE JOHN T. PATTON
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See also, S.Ct.Prac.R. II, Section 2(A)(1).